**SO ORDERED.**

**SIGNED this 10 day of January, 2008.**

_____
**J. Rich Leonard**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### WILSON DIVISION

IN RE:

ALICE B. CHAMBERLIN,

    DEBTOR.                                            CASE NO. 04-08503-8-JRL

_____

## ORDER

This case is before the court on a motion by debtor Alice Chamberlin ("debtor") for sanctions for violations of the discharge injunction, punitive damages, and attorneys' fees. On January 8, 2008, the court conducted a hearing on this matter in New Bern, North Carolina.

Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code on November 3, 2004, listing Providian Visa Card as an unsecured creditor. Debtor received a discharge on April 20, 2005. On August 17, 2007, debtor received a message from her son that he had received a voice message on his phone from a "Special Agent" requesting that the debtor contact him because she was facing charges for a debt owed. The debtor called the "Special Agent" at the number stated in the message and spoke with Mark Bishop of Northern American Asset Investigation Bureau ("Northern American Asset"). Bishop advised the debtor that a criminal "class B felony charge" and a "civil offense" were being brought against her for debts owed to Providian Visa Card. The

debtor informed Bishop that she had filed a chapter 7 case and that the Providian debt was included in the discharge of that bankruptcy. Bishop told the debtor that she had twenty-four hours to provide documentation of the bankruptcy and discharge.

Debtor attempted to contact her attorney but was unsuccessful. She called Northern American Asset back and spoke with Sara Wright. Wright repeated Bishop's threat of charges and told the debtor that she needed to set up a debit from her bank account for payments owed to Providian. The debtor again stated that this was a discharged debt. Wright challenged this by telling the debtor that she had a copy of the debtor's credit report, and that it was not a discharged debt. Wright then indicated that she was hired by an attorney in Ohio, Robert Goldstein, who was friends with the judge and would get what he wanted. Faced with these threats and unable to contact her attorney, the debtor established a payment plan for payment of the debt. Debtor subsequently contacted another attorney who advised her to stop payments on the payment plan she had previously established.

Debtor continued to receive phone calls regarding this debt. On September 15, 2007, the debtor received a message on her home phone, marked urgent, asking the debtor to return the call. This message also appeared on the debtor's directory at work. Debtor received two more calls that day at work and at home, including a phone call at 8:34 p.m. in which the debtor was again threatened with charges if she did not return the call within twenty-four hours. On September 17, 2007, debtor received a phone call, again marked urgent, at 8:38 p.m. on her cell phone regarding a civil complaint being brought against her. On September 24, 2007, the debtor received two phone calls, one at home and one at work, informing her that the matter would be turned over to the district attorney's office if she did not return to the call. Debtor's counsel contacted Northern American

Asset and obtained the company's address. During a second attempt to contact Northern American Asset, the company hung up on debtor's counsel.

Debtor's motion seeks sanctions and attorneys' fees for violations of the discharge injunction based on Northern American Asset's repeated threats of civil and criminal action related to the discharged debt. A discharge of a bankruptcy case "operates as an injunction against . . . an act to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). A bankruptcy court may enforce § 524(a) by the court's contempt power under 11 U.S.C. § 105(a).[1] See In re Bennett, 298 F.3d 1059, 1069 (9th Cir. 2002). In order to establish that a party should be held in civil contempt, the moving party "has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." Id. (citing FTC v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir. 1999) (citation omitted)).

In this case, the debtor presented evidence that Northern American Asset repeatedly attempted to collect a debt despite ample notice that the debt had been discharged during the debtor's bankruptcy. Northern American Asset did not appear at the January 8, 2008 hearing on this matter and has presented no evidence to the court to contradict the debtor's testimony. The court finds that Northern American Asset repeatedly and egregiously violated the discharge injunction by attempting to collect the discharged Providian Visa Card debt. Therefore, the court orders sanctions against Northern American Asset in the form of an award in favor of the debtor in the amount of

---

[1] In relevant part, § 105(a) provides: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

$5,000, as well as attorneys' fees in favor of the debtor's counsel in the amount of $1,500. The sanctions against Northern American Asset are to be paid within twenty (20) days of this order. If the sanctions are not paid by that date, the sanctions will increase $100 for every day they are not paid, with a cap imposed at $10,000.

"**END OF DOCUMENT"**